**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 10 2015

JAMES W. McCORMACK CLERK
By:_____
DEP CLERK

**GEORGE O. BEARDEN, III, AS ADMINISTRATOR**
**OF THE ESTATE OF GEORGE OLLIE BEARDEN, II,**
**FOR THE USE AND BENEFIT OF HIMSELF AND THE**
**OTHER STATUTORY BENEFICIARIES OF**
**GEORGE OLLIE BEARDEN, II, DECEASED**                    **PLAINTIFF**

VS.                    CASE NO. 3:15 cv160-DPM

**JONESBORO RETIREMENT RESIDENCE, LLC**
**D/B/A SOUTH WIND HEIGHTS**                    **DEFENDANT**

<u>**NOTICE OF REMOVAL**</u>

COMES NOW the Defendant Jonesboro Retirement Residence, LLC, and for its Notice
of Removal, states:

This case assigned to District Judge Marshall
and to Magistrate Judge Kay

1.       This action was filed by the Plaintiff in the Circuit Court of Craighead County,
Arkansas, on April 30, 2015.

2.       The Summons and Complaint filed by the Plaintiff in this action were served on
Jonesboro Retirement Residence, LLC on May 11, 2015.  A true and correct copy of all process,
pleadings, and orders served upon Jonesboro Retirement Residence, LLC are attached hereto as
Exhibit "A" and incorporated herein by this reference.

3.       Prior to filing this Notice of Removal Jonesboro Retirement Residence, LLC filed
its Answer to the Plaintiff's Complaint in the Circuit Court of Craighead County, Arkansas.  A
true and correct copy of the Answer filed by Jonesboro Retirement Residence, LLC is attached
hereto as Exhibit "B".

4.       The Complaint filed by the Plaintiff in this action alleges that Plaintiff is a citizen
of Tennessee.  Jonesboro Retirement Residence, LLC states and affirmatively alleges that it is a

citizen of a state other than Arkansas. For purposes of determining citizenship, the citizenship of a limited liability company is that of its Members. *See GMAC Commercial Credit LLV v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004). The penultimate Member of Jonesboro Retirement Residence, LLC is Holiday Acquisition Corp. Holiday Acquisition Corp. is a Delaware Corporation with a principal place of business in New York. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5.      This Court has jurisdiction of the subject matter of this proceeding pursuant to 28 U.S.C. §1332, and this case may properly be removed to this Court pursuant to 28 U.S.C. §§1441 and 1446.

6.      Pursuant to the procedural requirements of 28 U.S.C. §1446, Jonesboro Retirement Residence, LLC hereby gives notice of the removal of this cause to the United States District Court for the Eastern District of Arkansas, Western Division.

WHEREFORE, Jonesboro Retirement Residence, LLC prays that this action be removed from the Circuit Court of Craighead County, Arkansas, to the United States District Court for the Eastern District of Arkansas, Western Division, and for all other just and proper relief to which it may be entitled.

Respectfully submitted,

HARDIN, JESSON & TERRY, PLC
1401 W. Capitol Ave., Suite 190
Little Rock, Arkansas 72201
(501) 850-0015

By: _____
Kirkman T. Dougherty (Arkansas Bar No. 91133)
Jeffrey W. Hatfield (Arkansas Bar No. 96235)
Kynda Almefty (Arkansas Bar No. 2004197)

## CERTIFICATE OF SERVICE

I, Kynda Almefty, one of the attorneys for the Defendant, hereby certify the foregoing document was filed with the Clerk of the Court and that a true and correct copy has been served upon the Plaintiff by depositing a copy of the same in the U.S. Postal Mail Service, postage prepaid, addressed to:

Mr. Bobby F. Martin, Jr
MORGAN & MORGAN, LLC
One Commerce Square, Suite 2600
Memphis, Tennessee  38103

On this 10th day of June, 2015.

Kynda Almefty

Multiple claims. If a complaint asserts multiple claims which involve different subject matter divisions of the circuit court, the cover sheet for that division which is most definitive of the nature of the case should be selected and completed.

## COVER SHEET
## STATE OF ARKANSAS
## CIRCUIT COURT: CIVIL

To Save a copy of this form to your computer, please click the disk icon on the toolbar above.

The civil reporting form and the information contained herein shall not be admissible as evidence in any court proceeding or replace or supplement the filing and service of pleadings, orders, or other papers as required by law or Supreme Court Rule. This form is required pursuant to Administrative Order Number 8. Instructions are located on the back of the form.

**FILING INFORMATION**

County: Craighead        District: Western        Docket Number: CV-15-290

Judge: Richardson        Division: Civil        Filing Date: 4-30-15

Plaintiff: George Bearden III et al        Defendant: Jonesboro Retirement Residence

Attorney Providing Information:
☐ Plaintiff   ☐ Defendant   ☐ Intervenor

Address _____

Litigant, If Pro Se: _____

Address _____
Related Case(s): Judge _____        Case Number(s): _____

### Type of Case:

**Torts**
☐ (NM) Negligence: Motor Vehicle
☐ (NO) Negligence: Other
☐ (BF) Bad Faith
☐ (FR) Fraud
☑ (MP) Malpractice
☐ (PL) Product Liability
☐ (OD) Other _____

**Contracts**
☐ (IS) Insurance
☐ (DO) Debt: Open Account
☐ (PN) Debt: Promissory Note
☐ (EM) Employment
☐ (OC) Other _____

**Equity**
☐ (FC) Foreclosure
☐ (QT) Quiet Title
☐ (IJ) Injunction
☐ (PT) Partition
☐ (OT) Other _____

**Miscellaneous**
☐ (CO) Condemnation
☐ (RE) Replevin
☐ (DJ) Declaratory Judgment
☐ (UD) Unlawful Detainer
☐ (IN) Incorporation
☐ (EL) Election
☐ (FJ) Foreign Judgment
☐ (WT) Writs
☐ (AA) Administrative Appeal
☐ (CF) Property Forfeiture
☐ (RD) Remove Disabilities
☐ (NC) Name Change
☐ (OM) Other _____

Jury Trial Requested: ☐ Yes   ☐ No        Manner of Filing: ☐ Original   ☐ Re-open   ☐ Transfer
                                                              ☐ Return from Federal/Bankruptcy Court

### DISPOSITION INFORMATION

Disposition Date: _____        ☐ Bench Trial   ☐ Non-Trial   ☐ Jury Trial

**Judgment Type:**
☐ (DJ) Default Judgment
☐ (SJ) Summary Judgment
☐ (CJ) Consent Judgment
☐ (TJ) Trial Judgment
☐ (OJ) Other Judgment
☐ (PG) Petition Granted
☐ (PD) Petition Denied
☐ (DF) Decree of Foreclosure

**Dismissal Type:**
☐ (DW) Dismissed with Prejudice
☐ (DN) Dismissed without Prejudice

**Other:**
☐ (TR) Transferred to Another Jurisdiction
☐ (RB) Removed to Bankruptcy Court
☐ (RF) Removed to Federal Court
☐ (AR) Arbitration

**Judgment For:**
☐ Plaintiff   ☐ Defendant   ☐ Both        Judgment Amount: $ _____

Clerk's Signature _____        Date _____
AOC 23  16-01
625 Marshall Street
Little Rock, AR 72201

Send 1 paper or electronic copy to AOC upon filing.
Send 1 paper or electronic copy to AOC upon disposition.
Keep original in court file.

**Effective 1-1-2002**



EXHIBIT
A



**3**



FILED

2015 APR 30  PM 3: 23

CRAIGHEAD COUNTY
CIRCUIT COURT

# CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS
## CIVIL DIVISION

GEORGE O. BEARDEN, III, as Administrator of the ESTATE OF
GEORGE OLLIE BEARDEN, II, for the use and benefit of himself and
the other statutory beneficiaries of GEORGE OLLIE BEARDEN, II,
deceased,

**Plaintiff**

**v.**                                          No. CV-2015-290 (mr)

JONESBORO RETIREMENT RESIDENCE, L.L.C.
d/b/a SOUTH WIND HEIGHTS,

**Defendant**

## THE STATE OF ARKANSAS TO DEFENDANT:

Jonesboro Retirement Residence, L.L.C. d/b/a South Wind Heights
c/o The Corporation Company (Registered Agent)   **(defendants Name and Address)**
124 West Capitol Avenue, Suite 1900
Little Rock, AR 72201

***Please serve upon registered agent for service of process.

A lawsuit has been filed against you. The relief demanded is stated in the attached
complaint. Within 30 days after service of this summons on you (not counting the day
you received it) pr 60 days if you are incarcerated in any jail, penitentiary, or other
correctional facility in Arkansas, you must file with the clerk of this court a written
answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil
Procedure.

The answer or motion must also be served on the plaintiff of plaintiff's attorney, whose
name and address are: Bobby F. Martin, Jr., Esq., Morgan & Morgan - Memphis, LLC, One Commerce Square, Suite 2600,
40 S. Main Street, Memphis, TN 38103

If you fail to respond within the applicable time period, judgment by default will be
entered against you for the relief demanded in the complaint.

Candace Edwards                          CLERK OF COURT
511 S. Main St.
Jonesboro, AR. 72401                     Kersey Davis, DC

                                         Deputy Clerk
                                         Date: 4-30-15

Jonesboro Retirement Residence, L.L.C.

No. _____ **This summons is for** d/b/a South Wind Heights _____ *(name of Defendant).*

## PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____ _____[place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____ _____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at _____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____[name of defendant] on _____[date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ _____.

06/10/2015 12.54

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
[Signature of server]

_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

IN THE CIRCUIT COURT OF ARKANSAS
FOR THE SECOND JUDICIAL DISTRICT AT JONESBORO,
CRAIGHEAD COUNTY

2015 APR 30  PH 3: 23

CAROL ACE EDWARDS
CLERK OF CIRCUIT COURT

GEORGE O. BEARDEN, III, as Administrator of the
ESTATE OF GEORGE OLLIE BEARDEN, II, for the
use and benefit of himself and the other statutory
beneficiaries of GEORGE OLLIE BEARDEN, II,
deceased,

      Plaintiff,

v.

                                  No. CV-2015-290
                                    Jury Demanded (MR)

JONESBORO RETIREMENT RESIDENCE, L.L.C.
d/b/a SOUTH WIND HEIGHTS,

      Defendant.

---

## COMPLAINT FOR DAMAGES

---

    The Plaintiff, George O. Bearden, III, ("Plaintiff") as the duly appointed Administrator of

the Estate of George Ollie Bearden, II, deceased, for his own use and benefit and for that of the

other statutory beneficiaries of George Ollie Bearden, II, deceased ("Resident"), by and through

undersigned counsel, files the following Complaint for Damages against Jonesboro Retirement

Residence, L.L.C. d/b/a South Wind Heights ("South Wind") and respectfully states as follows

for his cause of action:

### I. PARTIES

    1.    The Plaintiff is an adult resident of Germantown, Shelby County, Tennessee and

has been such at all times pertinent to this Complaint.   The Plaintiff is the duly appointed

Administrator for the Estate of George Ollie Bearden, II, deceased.

2.      Upon information and belief, Defendant, Jonesboro Retirement Residence, L.L.C.
d/b/a South Wind Heights, is an Arkansas Corporation that was doing business in the state of
Arkansas as South Wind Heights, on or about May, 2013, and may be served through its agent
for service of process c/o The Corporation Company, 124 West Capitol Avenue, Suite 1900,
Little Rock, Arkansas 72201.  Defendant, Jonesboro Retirement Residence, L.L.C. d/b/a South
Wind Heights operated and controlled the facility at South Wind including the directors, officers
and staff who worked there.   This control included but was not limited to control of the
marketings, human resources, management, operations, training, staffing, creation and
implementation of all policies and procedures, federal and state Medicare and Medicaid
reimbursement, quality of care assessment and compliance, licensure and certification, legal
services, financial, tax and accounting and budgetary control through fiscal policies established
by Jonesboro Retirement Residence, L.L.C. d/b/a South Wind Heights.  The training, experience,
expertise and sophistication of South Wind enabled it to anticipate and know that failure to
reassess the ability of its residents fitness for independent living would likely result in injuries to
them, including George Ollie Bearden, II, deceased.  Pursuant to 42 CFR § 482.12, 42 CFR §
1395dd, et seq., and 42 CFR § 482.24 et seq., as well as other state and federal laws, South Wind
is liable for the acts and omissions of the directors, officers and staff identified in this Complaint,
and is liable for the failure of said individuals to timely recognize that Mr. Bearden was no
longer a candidate for independent living at its facility, which failure caused injury to George
Ollie Bearden, II, deceased.

3.      Defendant, South Wind, is vicariously liable for the acts and omissions of its
employees, servants, and agents at South Wind.

2

4.     At all times pertinent to this complaint, South Wind held itself out to the public in general and Mr. Bearden in particular as possessing the necessary skill, knowledge and expertise to operate an independent living facility.

5.     At all times relevant hereto, South Wind owed a duty to provide accommodations and services suitable for the Resident's needs in accordance with its contract with the Resident and in accordance with the recognized standard applicable to independent living facilities in Jonesboro, Arkansas and similar communities.

6.     At all times relevant hereto, South Wind owed a duty to ascertain, reassess and/or determine whether or not its accommodations and services continued to be suitable and safe for the Resident's needs in accordance with its contract with the Resident and in accordance with the recognized standard applicable to independent living facilities in Jonesboro, Arkansas, and similar communities.

7.     South Wind provided accommodations and services to the Resident through its agents, apparent and actual through its employees, agents and/or servants, ostensible, apparent, actual or otherwise.

8.     At all times relevant hereto, South Wind owed duties to provide accommodations and services for the Resident's needs in accordance with its contract with the Resident and in accordance with the recognized standard applicable to those individuals who provided accommodations and services to the Resident in Jonesboro, Arkansas, and similar communities.

## II. JURISDICTION AND VENUE

9.     All events that form the basis of this Complaint occurred in Craighead County, Arkansas.

3

10.     Venue is properly situated in Craighead County pursuant to ARK. CODE ANN. § 16-60-112.

11.     This Court has jurisdiction over the subject matter of this litigation pursuant to ARK. CODE ANN. § 16-13-201.

12.     This Court has personal jurisdiction over the parties to this action pursuant to ARK. CODE ANN. § 16-4-101 *et seq.*

### III. FACTS

13.     On or about April 13, 2011, Resident and South Wind entered into a Residency and Service Agreement (**Attached Ex. 1**).

14.     Prior to entering into the above-referenced agreement, South Wind made a determination that the Resident was mentally and physically suitable to maintain the independent living lifestyle which its facility offered.

15.     In exchange for monthly fees to be paid by Resident, South Wind agreed to provide, among other things, cleaning services, meals and functioning emergency response systems.

16.     South Wind, furthermore, agreed not to raise the monthly fee required by the resident without at least thirty (30) days written notice before any change in the monthly fee.

17.     Over the ensuing years of the Resident's stay at South Wind, his mental and physical condition deteriorated.

18.     The Resident had multiple medical episodes where emergency response personnel were called to the facility.

19.     The Resident became a danger to himself and others due to his medical and mental deterioration.

4

20.     The Resident became unfit for independent living.

21.     South Wind, its employees, agents and/servants knew or should have known that the Resident was unable to continue living independently at its facility.

22.     Despite the knowledge in the preceding paragraph, South Wind continued to allow the Resident to live at its facility and continued to accept monthly fees.

23.     South Wind increased the monthly fees to the Resident without providing at least 30 days prior notice.

24.     South Wind did not provide the cleaning and maintenance services to which it agreed according to the Residency and Services Agreement.

25.     South Wind did not provide and maintain a functioning emergency response system.

26.     South Wind stacked boxes of meals outside of the Resident's unit for days, rather than giving them directly to the Resident, insuring he was receiving the daily nourishment to which it agreed to provide.

27.     On or about May 12, 2013, the Resident was found in floor of his unit, wedged between his dresser and his bed with extreme dehydration, nausea and vomiting.

28.     According to emergency personnel, the Resident was in obvious distress and in danger of imminent bodily harm.

29.     According to emergency personnel, the Resident could hardly talk and was slurring his words.

30.     According to emergency personnel, the Resident appeared emaciated, dehydrated, malnourished, face and hands dirty, unkempt and had a foul odor.

5

31.    The Resident was transported emergently to St. Bernard's Medical Center in Jonesboro, Arkansas, for assessment and treatment.

32.    The Resident was seen and treated in the St. Bernard's Emergency Department.

33.    The Resident was diagnosed with community acquired pneumonia and sepsis.

34.    The Resident was admitted to St. Bernard's for further treatment of his medical condition.

35.    The Resident was discharged from St. Bernard's on or about May 23, 2013, and was transported to Rector Nursing and Rehab in Rector, Arkansas.

36.    The Resident died on January 7, 2014, from myocardial infarction, according to his State of Arkansas Certificate of Death.

## IV. NEGLIGENCE

37.    South Wind individually and/or vicariously, by or through its agents, servants and employees, is guilty of one (1) or more of the following acts of negligence, each and every such act being a direct and proximate cause of Resident's damages and injuries:

    (a)    Negligently and carelessly failing to timely recognize the signs and symptoms of malnourishment during Resident's term;

    (b)    Negligently and carelessly failing to timely recognize the signs and symptoms of dehydration, nausea and vomiting during Resident's term;

    (c)    Negligently and carelessly failing to timely recognize the signs and symptoms of distress and danger of imminent bodily harm;

    (d)    Negligently and carelessly failing to timely recognize the signs and symptoms of inability to speak clearly;

6

(e)     Negligently and carelessly failing to timely recognize the signs and symptoms of emaciation, face and hands dirty, unkempt person and foul odor;

(f)     Negligently and carelessly failing to initiate and/or obtain a transfer of Resident to a higher level of care;

(g)     Negligently and carelessly failing to recognize the Resident's decline in mental and physical condition in a timely manner;

(h)     Negligently and carelessly failing to ascertain and reassess whether or not the Resident continued to be a proper candidate for independent living at its facility;

(i)     Negligently and carelessly failed to abide by the terms of its agreement with the Resident to provide accommodations and services pursuant to said agreement;

(j)     Negligently and carelessly failing to exercise that degree of care and skill required of a reasonable and prudent independent living facility under the same or similar circumstances in cities such as Jonesboro, Craighead County, Arkansas in 2013; and

(k)     Negligently and carelessly deviating from the recognized standard required and expected of this Defendant under the circumstances that existed at all times relevant hereto.

7

## V. PUNITIVE DAMAGES

38.     South Wind, individually and/or vicariously, by or through its agents, servants and employees, is guilty of one (1) or more of the following acts of negligence, each and every such act being a direct and proximate cause of Resident's damages and injuries:

     (a)    Defendant knew or ought to have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in injury or damage and that it continued the conduct with malice or in reckless disregard of the consequences from which any malice may be inferred;

     (b)    Defendant's conduct above warrants an award of punitive damages.

## VI. MISREPRESENTATION AND FRAUD

39.     Defendant misrepresented a material fact by holding itself out to the public, including Resident, as having the ability to safely house elderly adults, whose mental and physical health would naturally undergo deterioration, in an independent living environment when Defendant knew or should have known that not to be the case.  Defendant made these misrepresentations with the intent to induce Resident to rely on them, and Resident in fact did rely on them.  Resident was damaged as a result.

## VII. VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

40.     Plaintiff adopts and incorporates all of the allegations set forth in previous sections above.

41.     Resident was a consumer under the Arkansas Deceptive Trade Practices Act ("ADTPA"), Arkansas Code Annotated §4-88-101 et seq.

42.     Defendant, South Wind, is a corporation subject to liability under ADTPA.

8

43.     The ADTPA prohibits any false, deceptive or unconscionable practice in business commerce or trade.  Defendant, South Wind, violated ADTPA by its actions directed toward Resident, including but not limited to its employees and agents, the representatives, and its web site and other publications, making false representations as to the characteristic and quality of the independent living accommodations and services it provided to the public, as prohibited by Arkansas Code Annotated §4-88-107(a) and §4-22-108(1).

44.     Defendant, South Wind, further violated ADTPA when its employees and agents, the representatives, and South Wind through its web site and other publications, failed to disclose information concerning the inadequate reassessment and or determination of whether or not residents continue to be suitable for independent living at its facility which can result in foreseeable harm and such failure to disclose the information was intended to induce Resident into continued occupancy for payment which he would not have entered into had the information been disclosed, as prohibited by Arkansas Code Annotated §4-88-107(a)(10) and 4-88-108(2).

45.     As a result of Defendant, South Wind's violation of ADTPA, Resident suffered financial loss and damages.

### VIII. COMPENSATORY DAMAGES

46.     As a sole, direct and proximate result of Defendant's negligence and breach of contract and duty to the Resident, and deviations from the applicable industry standards by Defendant, the Resident suffered injuries and death that otherwise would not have occurred. The Resident's injuries include, without limitation, physical and mental pain and suffering, unnecessary medical and other expenses, serious mental injury, damages resulting from breach of contract, loss of pecuniary value of Resident's life, and death.

47.     As the direct result of the Defendant's negligence as herein alleged, the Plaintiff is entitled to recover damages, including but not limited to, the following harms and losses:

    (a)     The Resident's medical expenses;

    (b)     The Resident's funeral expenses;

    (c)     The Resident's pain and suffering incurred prior to her death;

    (d)     The Resident's loss of earning capacity;

    (e)     Loss of pecuniary value of the deceased Resident's life;

    (f)     Damages pursuant to the wrongful death act for his heirs at law, including those of his son, the Plaintiff, George O. Bearden, III, for all of the harms and losses suffered by this individual and provided for by Arkansas law, including but not limited to their loss of support, services, companionship, as well as, mental anguish;

    (g)     Damages resulting from breach of contract; and

    (h)     All other harms, injuries, and losses allowed by law.

## IX. VICARIOUS LIABILITY

48.     Defendant, South Wind is vicariously liable for the acts and omissions of all its employees, servants and agents including, and every other member of its staff who provided accommodations and service to the Resident.

## X. RELIEF SOUGHT

WHEREFORE, the Plaintiff respectfully prays for judgment as follows:

1.     Compensatory damages in an amount to be determined by the jury;

2.     Damages for breach of contract;

3.     Punitive damages as may be determined by the jury;

10

4.    Damages allowable by Arkansas Deceptive Trade Practices Act;

5.    Damages caused by Defendant's acts of misrepresentation and fraud;

6.    That the Plaintiff be awarded interest as allowed by Arkansas law;

7.    For costs herein;

8.    That a jury of twelve (12) be empanelled to try the issues when joined; and

9.    Such other and further relief, both general and specific, as the Court may deem just and equitable.

Respectfully submitted,

**MORGAN & MORGAN – MEMPHIS, LLC**

Bobby F. Martin, Jr. (BRR #2008111)
One Commerce Square, Suite 2600
Memphis, Tennessee 38103
(901) 217-7000 – telephone
(901) 333-1897 – facsimile
Email: bmartin@forthepeople.com

11

# RESIDENCY AND SERVICE AGREEMENT

Thank you for choosing to live with us. We look forward to serving you and getting to know you better. On behalf of all of us living here, welcome to our Community!

This Agreement ("Agreement"), effective on the __15th__ day of _____April_____, __2011__, is between _____South Wind Heights_____ (the "Community") and _____George Bearden_____ ("you" or "your").

This is a month-to-month Agreement. By this Agreement, the Community agrees that you may occupy an apartment at _____2305 BERNARD STREET_____, ____JONESBORO____, ____AR____, and also receive board, activities, and services as described below. You will occupy unit No. ___211___ (the "Unit"). The Unit is to be occupied by no more than __1__ adult(s).

You agree to pay a monthly fee (the "Monthly Fee") during the term of this Agreement equal to the sum of:

$___1,450.00___ as base fee for occupancy, and for board and services
$_____ for 2nd person fee (if applicable)
$_____ for carport, garage, or underground parking fee (if applicable)
$_____ for _____
$___1,450.00___ Total Monthly Fee

Upon signing this Agreement you will also pay a one-time Community services and activities fee (the "Community Initiation Fee") in the amount of _____89.00_____. The purpose of the Community Initiation Fee is explained in Addendum CIF. The Community Initiation Fee is nonrefundable, except a portion of the Community Initiation Fee will be refunded to you if you leave in less than ninety (90) days, as explained in Addendum CIF attached to this Agreement. The Community Initiation Fee is not a security deposit, application fee, processing charge or a prepayment of rent. Payment of the Community Initiation Fee does not reduce your responsibility for your breach of this Agreement nor for your non-payment of any fee due under this Agreement.

1. **MONTHLY FEE**

   A.    You agree to pay the Monthly Fee in advance on the first day of each and every month at the office of the Community Manager (the "Manager") who is authorized to collect all fees from you.

   B.    The Community agrees not to increase the amount of your Monthly Fee before the anniversary month of this Agreement. For example, if you signed this Agreement and became a resident on January 25, 2009, the Community agrees not to increase the amount of your Monthly Fee until January 1, 2010. Afterwards, your Monthly Fee may change but not more frequently than one time each twelve months. You will receive thirty (30)

The original of this Agreement remains at the Community. You will be provided with a copy for your files.

Residency and Service Agreement
Revised January 1, 2009

Page 1 of 6

Ex. 1 to Complaint for Damages

days' written notice before any change to your Monthly Fee (or such longer amount of time as may be required by law).

C.    When there are charges for less than one full month, the Monthly Fee will be pro-rated based on the number of days in the month.

## 2.   FORMS AND ADDENDA

The following forms and addenda are attached to, and are a part of, this Agreement:

   __X__  LI - Liability Insurance     __X__  CIF - Community Initiation Fee

   __X__  A & L - Arbitration and Liability    ____  _____

   ____  _____    __X__  I - Rental Incentive

## 3.   GENERAL OBLIGATIONS

You agree to maintain the Unit in a clean and sanitary condition at all times, and not to violate any city ordinance, state or federal law which applies to the Unit. When you vacate the Unit at the time of move-out, you agree that the Unit will be in the same condition as when your occupancy commenced, with normal wear and tear excepted.

## 4.   UTILITY SERVICES

The Community will pay for all utilities except for your personal telephone charges, and any utilities listed on an addendum to this Agreement.

## 5.   MEALS

The Community shall provide you with __3__ meals daily in the dining room. If two of you live in the Unit, the meals shall be per person.

## 6.   HOUSEKEEPING

The Community shall provide weekly housekeeping consisting of light cleaning of the Unit, changing the bed and laundering linens and towels (if the Community provides them). The Community is not responsible for laundry of linens that you own. In addition, the Community is not responsible for cleaning areas of the Unit which require moving your personal property because we wouldn't want to risk breaking or damaging your belongings.

## 7.   ADDITIONAL SERVICES

The Community provides a variety of additional services, including social events, exercise classes, community activities, and scheduled transportation. The Monthly Fee and the Community Initiation Fee entitle you to receive these services without additional charges unless you are otherwise notified in advance.

The original of this Agreement remains at the Community. You will be provided with a copy for your files.

## 8.   RIGHT OF ENTRY

Because of the services provided to you in the Unit, such as housekeeping, linen and towel service (if the Community provides them), response to emergencies, and maintenance and repairs, you do not have the right of exclusive possession of the Unit. The Community retains the right to enter the Unit at any reasonable time as it deems necessary or advisable to perform such services and other management functions, make improvements or modifications to the Unit, and enforce the terms of this Agreement.   No additional locks are permitted on the entrance door to the Unit. Whenever feasible, the Community's staff will give you reasonable notice before entering the Unit or such notice as is required by law.

## 9.   PERSONAL PROPERTY

You have the right to place your personal property in the Unit. The Community will not be liable for lost, stolen, or damaged personal property, loss due to fire, windstorms, or any other hazard, unless the loss of such property is due to the Community's willful misconduct, or negligence, or as required by law.  The Community does not provide personal property insurance for your belongings or liability insurance for your actions. The Community strongly recommends that you maintain property insurance coverage to protect your personal belongings.

You are required to obtain liability insurance coverage to protect you from claims regarding your actions in an amount not less than $25,000. Evidence of such insurance must be provided to the Community.

> • I understand that I must obtain liability insurance within thirty (30) days of signing this Agreement and will provide evidence of such insurance within that time frame. (Your initials) _G.P._ (Date) _4-15-11_

In the event you use the Community's laundry equipment for personal laundry, the Community will not be responsible for any damage to or loss of your laundry.

## 10.   TRANSFERS FROM THE UNIT

A.   **Your Capacity for Apartment Living.**  The Community supports your right to live in the housing of your choice.  You should be aware, however, that the Community, its managers, and staff, are not licensed providers of any health care or personal care services.   The Community is not authorized to provide, nor does it provide, any health care or personal care services.  If you need health care or personal care services, you have the right to secure such services from an outside provider.  Any outside providers of health care or personal care services must comply with all of the Community's rules, policies and guidelines (as they may be amended). Ending your occupancy, however, may be appropriate if your actions or behaviors indicate that you (1) present a foreseeable direct threat to the health or safety of other individuals, (2) are likely to cause substantial

The original of this Agreement remains at the Community.  You will be provided with a copy for your files.

Residency and Service Agreement
Revised January 1, 2009                                                                                          Page 3 of 6

physical damage to the property of the Community or others, or (3) otherwise fail to abide by the Community's reasonable occupancy rules or this Agreement. In such cases, before serving a notice relating to the termination of this Agreement, the Manager will engage in an interactive process with you (or your representative), and consult with the Regional Director and the Resident Relations Department.

B.    **Release from Responsibility for Your Care.** It is your responsibility to provide for your health and personal care needs while living at the Community. You hereby agree to indemnify, hold harmless and release the Community, Harvest Facility Holdings LP, its subsidiaries and affiliates, and its directors, agents and employees, from any liability, cost, or responsibility for injury and damage, including attorneys' fees, arising from your failure to obtain (or the failure of others to furnish) appropriate health or personal care services, and from all injury and damage which could have been avoided or reduced if such services had been obtained or furnished.

## 11.    ASSIGNMENT OR SUBLETTING

You agree not to let, sublet, assign or transfer all or any part of your occupancy rights without the prior written consent of the Community. You also agree that the Unit will not be occupied by more people than the number indicated on page 1 of this Agreement. Any person or persons beyond this number who stay in the Unit more than fourteen (14) days and/or nights in a calendar year must have the prior written permission of the Community. You shall not be permitted to assign or transfer all or any part of your rights to receive services under this Agreement without the prior written consent of the Community.

## 12.    DANGEROUS OR HARMFUL ACTIVITIES

You agree not to take any action which could threaten or harm any resident, guest, or employee of the Community, and also not to intentionally damage the Unit or the property of the Community. You also shall be obligated to maintain the Unit so as not to create a fire, safety, or health hazard. Upon a determination by the Manager that you have violated any of these obligations to stay in the Community, you will receive a written notice of termination and eviction as provided in Section 13A.

## 13.    EVICTION, TERMINATION OF RIGHTS, TERMINATION OF AGREEMENT

A.    The Community is entitled to terminate your rights to stay in the Unit (i) if you fail to pay the Monthly Fee or any other charges promptly when they are due, (ii) if the Community determines that you (1) present a foreseeable direct threat to the health or safety of other individuals, (2) are likely to cause substantial physical damage to the property of the Community or others, or (3) have otherwise failed to abide by the Community's reasonable occupancy rules or this Agreement in

The original of this Agreement remains at the Community. You will be provided with a copy for your files.

Residency and Service Agreement
Revised January 1, 2009                                                                    Page 4 of 6

accordance with Section 10A, (iii) if the Community determines that you have engaged in dangerous or harmful activities as described in Section 12, or (iv) if you otherwise fail to comply with any of the terms or conditions of this Agreement.   You acknowledge that the Manager is responsible to promote the safety and well-being of all residents and staff in the Community, and therefore you agree that the Manager's determination that any of the foregoing conditions exist and are continuing shall be conclusive in the absence of bad faith or manifest error. In the event the Manager makes such a determination, the Community will deliver to you a written notice of termination and eviction which will take effect in 24 hours or as soon thereafter as permitted by law.

B.    In addition to the termination and eviction provisions of Section 13A, to terminate this Agreement, either party is required to provide thirty (30) days' written notice to the other party and the termination date will be the last day of the calendar month following the expiration of the thirty (30) day notice period (or such other period of time as required by law). The provisions of Sections 10B and 14G and Addendum A & L shall survive termination of this Agreement.

## 14.   MISCELLANEOUS TERMS

A.    The Community authorizes the Manager to maintain this Agreement and to receive all notices and demands from you on behalf of the Community.

B.    You and the Community have executed a separate Arbitration and Liability Limitation Agreement (Addendum A & L to this Agreement) which will govern the resolution of disputes between you and the Community except for eviction procedures.

C.    You certify that at least one (1) person living in the Unit is fifty-five (55) years of age or older.

D.    You agree to abide by the Community guidelines established, from time to time, by the Community.

E.    You agree to use the Unit only as a personal living space.  You and your guests agree to conduct yourselves in a manner that is peaceful and harmonious with the other occupants of the Community.

F.    In the event of a situation that the Community's staff judges to be a possible medical emergency, you hereby authorize the Community to take whatever steps are necessary to meet your emergency medical needs, including summoning emergency medical professionals. Any costs incurred will be your sole responsibility even if the emergency medical services were ordered by the Community.

The original of this Agreement remains at the Community.  You will be provided with a copy for your files.

G.   In the event that the Community brings a legal action to cause you to vacate the Unit, the prevailing party in such action may collect from the losing party reasonable attorney's fees and costs, plus costs and disbursements, if such recovery is permitted by law.

H.   The parties acknowledge and agree that this Agreement contains their entire understanding and agreement and that all other representations, assurances, and promises, either oral or written, not incorporated or contained herein, are void and of no force and effect. If any term or provision of this Agreement shall to any extent be determined to be invalid, illegal or unenforceable, the remainder of this Agreement shall not be affected. Each term of this Agreement shall be valid and enforceable to the fullest extent consistent with applicable law and this Agreement shall be interpreted and construed as though any invalid, illegal or unenforceable term or provision were not contained in this Agreement. I/We have read, understand, and agree to the terms of the Agreement and understand that it is a complete expression of this Agreement.

I/We understand that there are no verbal promises or understandings pertaining to this contract other than those specified in this Agreement. I/We agree that any amendments or modifications to this Agreement must be in writing and signed by the Community and me/us. I/We acknowledge receiving copies of this Agreement, and of all addenda as listed in Section No. 2 on Page 2 of this Agreement. I/We agree to abide by the terms and requirements that are presented therein.

**YOUR NAME:** _____ George Bearden _____

**YOUR SIGNATURE:** _George Bearden_ **DATE:** _9-15-11_

If two persons are named above, the second person should sign here:

**YOUR NAME:** _____

**YOUR SIGNATURE:** _____ **DATE:** _____

**COMMUNITY:** _____ South Wind Heights _____

**BY:** _____ **DATE:** _____
   **Manager**

The original of this Agreement remains at the Community. You will be provided with a copy for your files.



**RELEASE OF RIGHTS**

Project Description:

Quotes and/or photographs relating to the lifestyle and events associated with living in a Holiday Retirement Community.

I hereby grant Holiday Retirement the right and permission to copyright and use, reproduce, distribute, display, broadcast and publish any audio, video, photographic, or written reproductions of or by me in their marketing and advertising materials in any medium; the right to prepare derivative works therefrom; and the right to register all copyrights in the work in the name of Holiday Retirement or its related entities. I waive any rights to inspect or approve the materials or to lay claim to any benefits derived from them. I certify I am of legal age to enter into a contractual agreement and that I understand the foregoing before affixing my signature below.

| | | |
|---|---|---|
| _Signed_ | _4-15-11_ | _George Beard_ |
| Signed | Date | Printed Name |

Address

MK-120

Revised June 2010

**ADDENDUM A & L**
**TO THE**
**RESIDENCY AND SERVICE AGREEMENT**

## ARBITRATION AND LIABILITY LIMITATION AGREEMENT

You and the Community have entered into a Residency and Service Agreement (the "Agreement") which describes the Arbitration and Liability Limitation Agreement. Terms defined in the Agreement have the same meanings in this Addendum A & L as in the Agreement.

THIS ARBITRATION AND LIABILITY LIMITATION AGREEMENT ("Addendum A & L") requires that disputes and legal claims between YOU (including your representatives and successors) and the COMMUNITY (including its employees, management company, and successors, etc.) be resolved through final and binding arbitration rather than in the court system, except for eviction proceedings. This Addendum A & L also limits the amount of non-compensatory damages that you can recover in any dispute to $250,000. By including these provisions for arbitration and liability limitation, the Community can charge lower fees to cover its expected costs than it would otherwise be required to charge. Your Monthly Fee under the Agreement has been established in reliance on these provisions.

1.     **ARBITRATION**

Arbitration is a means to resolve disputes *without* a Judge or jury. Arbitration is generally a quicker, more efficient and less expensive means to resolve disputes. This agreement to arbitrate includes claims for personal injury or property damage, and applies to any and all disputes or legal claims for breach of contract, tort, breach of statutory duties, or based on any other legal theory, whether currently existing or arising in the future, other than any action for eviction. The following provisions are hereby agreed upon:

A.     Should such a dispute arise (other than eviction), a demand for arbitration must be sent via Certified Mail, Return Receipt Requested.

B.     The arbitration will be heard by one neutral arbitrator. The parties will make their best efforts to agree on an arbitrator, who has appropriate experience. If the parties cannot agree on the arbitrator within thirty (30) days of receipt of the demand for arbitration, then the matter shall be submitted to the American Arbitration Association ("AAA").

C.     The arbitrator's fees and the costs associated with the arbitration shall be divided equally between the parties, unless you are proven to be indigent.

D.     The parties shall bear their own attorney's fees and costs and hereby expressly waive any statutory or other right to recover attorney's fees or costs, actual or statutory.

E.    The arbitration process shall be governed by the Federal Arbitration Act (FAA) and shall be conducted in accordance with commercial arbitration rules of the AAA.

F.    The arbitration will occur in the county where the actual facility is located, unless you and the Community agree to have it in another county.  All discovery shall be governed by the Rules of Civil Procedure for the state in which the actual facility is located.

G.    If any Court determines that the FAA does not apply to this Addendum A & L, the parties still wish to make clear their desire to resolve their claims through arbitration without a Judge and jury.

H.    The decision of the arbitrator shall be final and binding upon both parties without any right to appeal.

**2.    LIMITS OF LIABILITY**

Under the terms of this Addendum A & L, the amount of damages that can be awarded, to either party for any dispute or claim, are limited as follows:

A.    **Non-economic or non-compensatory damages, such as pain and suffering, are limited to a maximum of $250,000.**

B.    **No punitive damages or exemplary damages may be awarded.**

C.    Net economic damages may be awarded, including past and future medical expenses, as determined by the arbitrator. These damage amounts shall be reduced, however, by any available collateral source payments, such as payments made by medical insurance.

D.    Interest and/or late fees on any unpaid Monthly Fee or other fees shall not be awarded.

**3.    ADDITIONAL PROVISIONS**

A.    **Enforceability and Interpretation of this Addendum A & L.**    Any dispute regarding the enforceability and/or interpretation of this Addendum A & L shall itself be decided by the arbitrator and not by a Judge or a jury. The process for selection of an arbitrator and the arbitration shall progress as outlined in Section I, above.

B.    **Enforceability and Survival.**  If any arbitrator or court of competent jurisdiction declares that any part of this Addendum A & L is invalid or unenforceable, such declaration will not affect the enforceability of the remaining parts of this Addendum A & L.  The provisions of this Addendum A & L shall also survive the death of any party to this

Addendum A & L. The parties intend that all disputes other than eviction should be resolved via arbitration.

C.  **Overlooking Obligation to Arbitrate**. If you or the Community overlook the obligation to arbitrate disputes and participate in litigating the matter in the court system, neither party will be deemed to have waived the right to compel arbitration, assuming a motion to compel arbitration or demand for arbitration highlighted in Section 1 above, is filed and served within ninety (90) days from the filing of the formal Complaint setting forth the allegations.

D.  **Confidentiality**. The parties agree that all of the discovery (i.e. exchange of information prior to the arbitration), the arbitration hearing itself and the arbitration award are all strictly confidential. Because of its non-public forum, arbitration will protect the privacy of sensitive personal issues, such as mental disease and physical impairments, that can arise in disputes. The confidentiality provisions prohibit either party from discussing any of the terms and conditions of this Addendum A & L or the specifics of the dispute with anyone not involved in the dispute process, including any media outlet, government entity, or any other person or corporation not a party to the dispute.

E.  **Acknowledgement of Understanding**. Your signature on this Addendum A & L indicates that you have read and understand the arbitration and the liability limitation provisions contained herein. Your signature also indicates that you have had a full opportunity to ask questions about these provisions and to consult an attorney or any other individual of your choosing before making a decision to sign this Addendum A & L. If you choose not to agree to these provisions, you understand that you have the right and the choice to seek residency at another retirement residence if you wish. By signing this Addendum A & L, you agree that the reasons stated above are proper consideration for the arbitration and liability limitation provisions contained in this Addendum A & L.

*The Information above constitutes the full extent of this Addendum.*

DATED this  13th  day of _____ April _____, 2011 .

COMMUNITY: South Wind Heights      YOUR NAME:  George Bearden

BY:_____              YOUR SIGNATURE: _____
    Manager

                                  YOUR NAME George Beardch

                                  YOUR SIGNATURE: _____

Addendum A & L                                        Page 3 of 3
June 1, 2008

**ADDENDUM CIF**
**TO THE**
**RESIDENCY AND SERVICE AGREEMENT**

### COMMUNITY INITIATION FEE

You and the Community have entered into a Residency and Service Agreement (the "Agreement") which describes the Community Initiation Fee.   Terms defined in the Agreement have the same meanings in this Addendum CIF ("Addendum") as in the Agreement.

Upon admission to the Community, you will pay a one-time, non-refundable Community Initiation Fee in the amount of _____99.00_____.  The Community Initiation Fee is an initial membership charge and is intended to cover some of the costs of providing activities, transportation and other services at the Community, including some of the equipment used for the services provided at the Community.  The Community Initiation Fee is not a security deposit, application fee, processing charge or a prepayment of rent. **The Community Initiation Fee is non-refundable, except as noted below.**

In an effort to guarantee your satisfaction, if you live in the Community for ninety (90) days or less, a portion of the Community Initiation Fee will be returned to you based on the following schedule:

100% refund for 1 to 30 days of occupancy
66% refund for 31 to 60 days of occupancy
33% refund for 61 to 90 days of occupancy
0% refund for 91+ days of occupancy

*The information above constitutes the full extent of this Addendum.*

DATED this _____13th_____ day of _____April_____ , ____2011____.

COMMUNITY: ___South Wind Heights___       YOUR NAME: _____George Bearden_____

BY:_____       YOUR SIGNATURE: _____
         Manager

                                          YOUR NAME: _____

                                          YOUR SIGNATURE: _____

# ADDENDUM I
## TO THE
## RESIDENCY AND SERVICE AGREEMENT

### RENTAL INCENTIVE

Community # __5291__          Community Name _____South Wind Heights_____          ·Unit # ___211___

You and the Community have entered into a Residency and Service Agreement (the "Agreement") to which this non-renewable addendum is attached.   Terms defined in the Agreement have the same meanings in this Addendum I ("Addendum") as in the Agreement.

The following special arrangements are hereby made a part of the Agreement and are valid only at the time of your original move-in.

This Rental Incentive grants you a Total Savings of $___3,574.33___.

Incentive to reduce the Monthly Fee as follows:

| Month of Incentive | Amount | Description of Incentive |
|---|---|---|
| April 2011 | 2,124.33 | NRF Incentive, Incentive |
| May 2011 | 725.00 | Incentive |
| June 2011 | 725.00 | Incentive |

3,574.33

With the exception of the incentives listed above, your monthly fee will remain as indicated on page 1 of the Agreement.

*The information above constitutes the full extent of this Addendum.*

DATED this ____13th____ day of _____April_____, ____2011____.

COMMUNITY: _____South Wind Heights_____          YOUR NAME:_____George Bearden_____

BY:_____          YOUR SIGNATURE: _____
         Manager                                                       YOUR NAME:_____

                                                                      YOUR SIGNATURE: _____

Addendum I                                                                                              Page 1 of 1
Revised June 1, 2008



# MOBILITY AIDS POLICY & OPERATING REQUIREMENTS

It is the policy of Holiday to comply with Title VIII of the Civil Rights Act of 1968 (commonly known as the Fair Housing Act) by providing housing without regard to race, color, religion, national origin, disability, or sex. This policy means, among other things, that residents of a Holiday Community who have physical disabilities that require the use of mobility aids, such as wheelchairs, motorized wheelchairs, scooters, or walkers are afforded equal access to the facilities and services of the Community including, but not limited to, the dining room and other common areas.

A resident's use of a mobility aid may be limited or prohibited, if it is determined that he or she is operating the aid in such a way that it would constitute a direct threat to the health or safety of others, would result in substantial physical damage to the property of others, or if the circumstances pose other safety risks to the resident or others.

Should damage or physical harm to another occur, you may be responsible for such damage or injury.

Mobility aids must be parked in designated areas established by the Community and as required by the local fire agency.

All prospective residents shall be provided with a copy of this Policy at the time of application. All current residents shall be provided with a copy of this Policy as soon as possible after its publication.

Holiday has a policy of reasonably accommodating residents and prospective residents with disabilities. If you believe that a modification or exception to any policy or procedure needs to be made to enable you to enjoy equal access to any facility or service offered at the Community, you may contact Resident Relations at (800) 370-8331 and obtain a form that will allow you to propose a reasonable modification or exception in writing. Any other question or comment about this Policy may also be directed to Resident Relations at the number above.

## OPERATING REQUIREMENTS

1. All motorized wheelchairs and scooters must have **gel-type** batteries. (Cell-type batteries have been determined a fire hazard.)

2. I have read my owners manual and have been instructed on proper use and maintenance of my mobility aid.

3. **Only** the owner, authorized user, or an appropriate member of the staff may operate the mobility aid.

4. Your mobility aid must be parked in a designated area during meals. Wheelchairs, scooters and walkers are bulky and can create a trip hazard for residents and Associates in a dining room setting, where space is limited, and large numbers of people congregate. If you need the mobility aid to get to your table, you may take it into the dining room and transfer to your seat. A dining room Associate will take it to the parking area. If you cannot safely transfer from your mobility aid to a dining room chair, you must discuss this fact with a member of the Management Team. They will

make arrangements for you to sit in your mobility aid in a designated area of the dining room that has space available to safely accommodate carts.

5. You must exercise extreme caution when backing out of an elevator or coming around corners.

6. In your travels in and around the Community, please stay on the **far right-hand side** of the passageway. This will lessen the possibility of a head-on collision.

7. You must slow to half your normal speed when negotiating a corner or curve.

8. Motorized wheelchairs shall not be driven faster than the natural walking speed of any pedestrian while on Community property.

I understand and agree to all of the terms contained in the Mobility Aids Policy and Operating Requirements.

Resident Signature: _____

Resident Signature: _____

Print Name: _GEORGE BEARD_____ Date: _5-20-11_____

Print Name: _____ Date: _____



## AFFIDAVIT OF SERVICE

State of Arkansas        County of Craighead

**FILED** Circuit Court

2015 MAY 21   PM 3: 22

CANDACE EDWARDS
CLERK OF CIRCUIT COURT

Case Number: CV-2015-290 (MR)

Plaintiff:
**George O. Bearden, III, as Administrator of The Estate of George Ollie Bearden, II; for the use and benefit of himself and the other statutory beneficiaries of George Ollie Bearden, II; Deceased**
vs.
Defendant:
**Jonesboro Retirement Residence, L.L.C., d/b/a South Wind Heights**

For: Mr. Bobby Martin, Jr., Esq
Morgan & Morgan Attorneys at Law

Received by MYERS ATTORNEY'S SERVICE to be served on Jonesboro Retirement Residence, L.L.C., D/B/A South Wind Heights by serving The Corporation Company, RA, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201. I, _Andrew Myers_ , being duly sworn, depose and say that on the _11_ day of _May_ , 20 _15_ at _2:15_ p.m., executed service by delivering a true copy of the SUMMONS, NOTICE, COMPLAINT FOR DAMAGES, EXHIBITS, in accordance with state statutes in the manner marked below:

( ) GOV.AGENCY: By Serving _____ As _____ of the within-named agency.

(✓) CORPORATE SERVICE: By Serving _The Corp Co. / Karen Moore_ as ____ _Reg Agent_

( ) OTHER SERVICE:See Comments Below:
( ) NON SERVICE: See Comments Below:
Service Was Completed At: _124 w capitol Ave, #1900, Little Rock, AR 72201_

COMMENTS: _____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

_Marissa McK_
NOTARY PUBLIC

(seal) MARISSA MCKINNEY
COMM. EXP:
1-27-2025
No. 12402652
PULASKI
COUNTY
NOTARY PUBLIC - ARKANSAS

_Andrew Myers_

PROCESS SERVER # _____
Appointed in accordance with State Statutes

**MYERS ATTORNEY'S SERVICE**
300 Spring Building
300 Spring Street, Suite 715
Little Rock, AR 72201
(501) 376-6266

Our Job Serial Number: 2015002965

Copyright © 1992-2013 Database Services, Inc. - Process Server's Toolbox V7.0r

# CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS
## CIVIL DIVISION

GEORGE O. BEARDEN, III, as Administrator of the ESTATE OF
GEORGE OLLIE BEARDEN, II, for the use and benefit of himself and
the other statutory beneficiaries of GEORGE OLLIE BEARDEN, II,
deceased,

**Plaintiff**

v.                                                      No. CV 2015-290(mr)

JONESBORO RETIREMENT RESIDENCE, L.L.C.
d/b/a SOUTH WIND HEIGHTS,

**Defendant**

# THE STATE OF ARKANSAS TO DEFENDANT:

Jonesboro Retirement Residence, L.L.C. d/b/a South Wind Heights
c/o The Corporation Company (Registered Agent)    **(defendants Name and Address)**
124 West Capitol Avenue, Suite 1900
Little Rock, AR 72201

***Please serve upon registered agent for service of process.

A lawsuit has been filed against you. The relief demanded is stated in the attached
complaint. Within 30 days after service of this summons on you (not counting the day
you received it) pr 60 days if you are incarcerated in any jail, penitentiary, or other
correctional facility in Arkansas, you must file with the clerk of this court a written
answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil
Procedure.

The answer or motion must also be served on the plaintiff of plaintiff's attorney, whose
name and address are: Bobby F. Martin, Jr., Esq., Morgan & Morgan - Memphis, LLC, One Commerce Square, Suite 2600,
40 S. Main Street, Memphis, TN 38103

If you fail to respond within the applicable time period, judgment by default will be
entered against you for the relief demanded in the complaint.

**Candace Edwards**                                    CLERK OF COURT
511 S. Main St.
Jonesboro, AR. 72401                                   Kasey Travis, DC

                                                       Deputy Clerk
                                                       Date: 4·30·15

SEAL
CLERK OF CIRCUIT COURT
CRAIGHEAD COUNTY
ARKANSAS

No. _____   **This summons is for**  Jonesboro Retirement Residence, L.L.C.
d/b/a South Wind Heights _____ *(name of Defendant).*

### PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____ [place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____ _____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at _____ [address] with _____ [name], a person at least 14 years of age who resides there, on _____ [date]; or

☐ I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant] on _____ [date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                                                    By: _____
                                                    [Signature of server]

                                                    _____
                                                    [Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                                                    [Signature of server]

                                                    _____
                                                    [Printed name]

Address: _____

                _____

Phone: _____

Subscribed and sworn to before me this date: _____

                                                    _____
                                                    Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____



# MORGAN & MORGAN®
#### ———— *Attorneys At Law* ————

SUITE 2600
ONE COMMERCE SQUARE
MEMPHIS, TN 38103
(901) 217-7000
FAX: (901) 333-1897

April 29, 2015



**VIA FEDERAL EXPRESS**
Ms. Candace Edwards
Craighead County Circuit Court Clerk
511 South Main Street
Jonesboro, Arkansas 72401

   RE: George O. Bearden, III, as Administrator of the Estate of George Ollie Bearden, II, for the use and benefit of himself and the other statutory beneficiaries of George Ollie Bearden, II, deceased v. Jonesboro Retirement Residence, L.L.C. d/b/a South Wind Heights

Dear Ms. Edwards:

Enclosed, for filing and issuance, please find the following:

1) Complaint for Damages; and

2) Summons – Jonesboro Retirement Residence, L.L.C. d/b/a South Wind Heights.

I have also enclosed a check in the amount of One Hundred Sixty-Five Dollars ($165.00) together with an additional copy of each to be file stamped and returned in the enclosed self-addressed, stamped envelope, together with the issued Summons and attachment thereto. A private process server will be used to serve the Summons.

Thank you for your assistance in this matter. If you have any questions, please do not hesitate to contact me at (901) 333-1811.

Sincerely,

**MORGAN & MORGAN – MEMPHIS, LLC**

*Wendy Sorrels*

Wendy Sorrels
Paralegal for Bobby F. Martin, Jr., Esq.
Email: wsorrels@forthepeople.com

/ws
Enclosures

———————— www.forthepeople.com ————————

ATLANTA, GA ◆ BOWLING GREEN, KY ◆ COLUMBUS, GA ◆ DAYTONA BEACH, FL ◆ FT. MYERS, FL ◆ JACKSON, MS ◆ JACKSONVILLE, FL ◆ KISSIMMEE, FL ◆ LAKELAND, FL
LEXINGTON, KY ◆ LOUISVILLE, KY ◆ MANHATTAN, NY ◆ MEMPHIS, TN ◆ NAPLES, FL ◆ NASHVILLE, TN ◆ ORLANDO, FL ◆ PLANTATION, FL ◆ ST. PETERSBURG, FL
SARASOTA, FL ◆ SAVANNAH, GA ◆ TALLAHASSEE, FL ◆ TAMPA, FL ◆ TAVARES, FL ◆ THE VILLAGES, FL ◆ WINTER HAVEN, FL

IN THE CIRCUIT COURT OF CRAIGHEAD COUNTY, ARKANSAS

GEORGE O. BEARDEN, III, AS ADMINISTRATOR
OF THE ESTATE OF GEORGE OLLIE BEARDEN, II,
FOR THE USE AND BENEFIT OF HIMSELF AND THE
OTHER STATUTORY BENEFICIARIES OF
GEORGE OLLIE BEARDEN, II, DECEASED                    **PLAINTIFF**



VS.                          CASE NO. CV-2015-290

JONESBORO RETIREMENT RESIDENCE, LLC
D/B/A SOUTH WIND HEIGHTS                              **DEFENDANT**

### ANSWER TO COMPLAINT

Comes now the Defendant, Jonesboro Retirement Residence LLC, by and through its attorneys, Hardin, Jesson & Terry, PLC, and for its Answer to Plaintiff's Complaint, states as follows:

1.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint, and those allegations are therefore denied.

2.      With respect to the allegations contained in Paragraph 2 of Plaintiff's Complaint, Defendant admits that it is a foreign limited liability company and its agent for service of process is The Corporation Company, 124 West Capitol Ave., Little Rock, Arkansas. Defendant denies all remaining allegations set forth in Paragraph 2 of Plaintiff's Complaint.

3.      Defendant denies the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.      The allegations in Paragraph 4 of the Complaint consist of legal arguments and conclusions of counsel to which no response is required by Defendant. To the extent a response is required, the allegations are denied.

1


EXHIBIT
B

5.      The allegations in Paragraph 5 of the Complaint consist of legal arguments and conclusions of counsel to which no response is required by Defendant.  To the extent a response is required, the allegations are denied.

6.      The allegations in Paragraph 6 of the Complaint consist of legal arguments and conclusions of counsel to which no response is required by Defendant.  To the extent a response is required, the allegations are denied.

7.      The allegations in Paragraph 7 of the Complaint consist of legal arguments and conclusions of counsel to which no response is required by Defendant.  To the extent a response is required, the allegations are denied.

8.      The allegations in Paragraph 8 of the Complaint consist of legal arguments and conclusions of counsel to which no response is required by Defendant.  To the extent a response is required, the allegations are denied.

9.      Defendant admits the allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.     Defendant objects to venue in this Court.

11.     Defendant objects to jurisdiction in this Court.

12.     Defendant objects to jurisdiction in this Court.

13.     Defendant admits that Exhibit 1 is attached to Plaintiff's Complaint and that it speaks for itself.  To the extent the allegations contained in Paragraph 13 of Plaintiff's Complaint are inconsistent with the language within Exhibit 1, those allegations are denied.

14.     Defendant denies the allegations contained in Paragraph 14 of Plaintiff's Complaint.

2

15.    Defendant admits that Mr. Bearden and Jonesboro Retirement Residence entered into a Residency and Service Agreement.  The Agreement speaks for itself, and to the extent the allegations contained in Paragraph 15 of Plaintiff's Complaint are inconsistent with the language of the Agreement, those allegations are denied.

16.    Defendant admits that Mr. Bearden and Jonesboro Retirement Residence entered into a Residency and Service Agreement.  The Agreement speaks for itself, and to the extent the allegations contained in Paragraph 16 of Plaintiff's Complaint are inconsistent with the language of the Agreement, those allegations are denied.

17.    With respect to the allegations contained in Paragraph 17 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any allegations set forth in Paragraph 17 of Plaintiff's Complaint that are inconsistent with the medical records.

18.    With respect to the allegations contained in Paragraph 18 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any allegations set forth in Paragraph 18 of Plaintiff's Complaint that are inconsistent with the medical records.

19.    With respect to the allegations contained in Paragraph 19 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any allegations set forth in Paragraph 19 of Plaintiff's Complaint that are inconsistent with the medical records.

20.    With respect to the allegations contained in Paragraph 20 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any

allegations set forth in Paragraph 20 of Plaintiff's Complaint that are inconsistent with the medical records.

21.     The allegations contained in Paragraph 21 are denied.

22.     The allegations contained in Paragraph 22 are denied.

23.     The allegations contained in Paragraph 23 are denied.

24.     The allegations contained in Paragraph 24 are denied.

25.     The allegations contained in Paragraph 25 are denied.

26.     The allegations contained in Paragraph 26 are denied.

27.     With respect to the allegations contained in Paragraph 27 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any allegations set forth in Paragraph 27 of Plaintiff's Complaint that are inconsistent with the medical records.

28.     With respect to the allegations contained in Paragraph 28 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any allegations set forth in Paragraph 28 of Plaintiff's Complaint that are inconsistent with the medical records.

29.     With respect to the allegations contained in Paragraph 29 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any allegations set forth in Paragraph 29 of Plaintiff's Complaint that are inconsistent with the medical records.

30.     With respect to the allegations contained in Paragraph 30 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any

allegations set forth in Paragraph 30 of Plaintiff's Complaint that are inconsistent with the medical records.

31.     With respect to the allegations contained in Paragraph 31 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect any transfers and his medical condition.  Defendant denies any allegations set forth in Paragraph 31 of Plaintiff's Complaint that are inconsistent with the medical records.

32.     With respect to the allegations contained in Paragraph 32 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any allegations set forth in Paragraph 32 of Plaintiff's Complaint that are inconsistent with the medical records.

33.     With respect to the allegations contained in Paragraph 33 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any allegations set forth in Paragraph 33 of Plaintiff's Complaint that are inconsistent with the medical records.

34.     With respect to the allegations contained in Paragraph 34 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect his medical condition.   Defendant denies any allegations set forth in Paragraph 34 of Plaintiff's Complaint that are inconsistent with the medical records.

35.     With respect to the allegations contained in Paragraph 35 of Plaintiff's Complaint, Mr. Bearden's medical records best reflect dates of admission and discharge to facilities. Defendant denies any allegations set forth in Paragraph 35 of Plaintiff's Complaint that are inconsistent with the medical records.

36.     With respect to the allegations contained in Paragraph 36 of Plaintiff's Complaint, Mr. Bearden's Death Certificate state his date of death and suspected cause of death.  Defendant denies any allegations set forth in Paragraph 36 of Plaintiff's Complaint that are inconsistent with the death certificate.

37.     Defendant denies the allegations contained in Paragraph 37 of Plaintiff's Complaint, including sub-parts (a) through (k).

38.     Defendant denies the allegations contained in Paragraph 38 of Plaintiff's Complaint, including sub-parts (a) and (b).

39.     Defendant denies the allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.     With respect to the allegations contained in Paragraph 40 of Plaintiff's Complaint, Defendant incorporates by this reference all allegations and denials previously set forth in this Answer.

41.     The allegations contained in Paragraph 41 of Plaintiff's Complaint fail to state facts against Defendant as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendant.  To the extent Paragraph 41 is construed to state allegations against Defendant, Defendant admits that the Arkansas Deceptive Trade Practices Act was in existence.  The Act speaks for itself, and to the extent the allegations contained in Paragraph 41 of Plaintiff's Complaint are inconsistent with the language of the Act, those allegations are denied.

42.     The allegations contained in Paragraph 42 of Plaintiff's Complaint fail to state facts against Defendant as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendant.  To the extent Paragraph 42 is construed to state allegations

against Defendant, Defendant admits that the Arkansas Deceptive Trade Practices Act was in existence. The Act speaks for itself, and to the extent the allegations contained in Paragraph 42 of Plaintiff's Complaint are inconsistent with the language of the Act, those allegations are denied.

43.   The allegations contained in the first sentence of Paragraph 43 of Plaintiff's Complaint fail to state facts against Defendant as required by Rule 8 of the Rules of Civil Procedure, and, therefore, no response is required by Defendant.  To the extent the first sentence of Paragraph 43 is construed to state allegations against Defendant, Defendant admits that the Arkansas Deceptive Trade Practices Act was in existence.  The Act speaks for itself, and to the extent the allegations contained in the first sentence of Paragraph 43 of Plaintiff's Complaint are inconsistent with the language of the Act, those allegations are denied.  Defendant denies the remaining allegations of Paragraph 43.

44.   Defendant denies the allegations contained in Paragraph 44 of Plaintiff's Complaint.

45.   Defendant denies the allegations contained in Paragraph 45 of Plaintiff's Complaint.

46.   Defendant denies the allegations contained in Paragraph 46 of Plaintiff's Complaint.

47.   Defendant denies the allegations contained in Paragraph 47 of Plaintiff's Complaint, including sup-parts (a) through (h).

48.   Defendant denies the allegations contained in Paragraph 48 of Plaintiff's Complaint.

49.    Defendant denies the allegations contained in the WHEREFORE Paragraph of Plaintiff's Complaint, including sub-parts (1) through (9).

50.    Defendant denies that Plaintiff is entitled to any damages.

51.    Defendant denies all allegations contained in Plaintiff's Complaint that are not specifically admitted herein.

52.    Pleading further, and in the affirmative, Defendant asserts the defenses of comparative negligence, contributory negligence, insufficiency of service, insufficiency of process, intervening cause, Act of God, assumption of risk, waiver, laches, impossibility of performance and negligence of third parties over whom Defendant exercises no dominion or control as complete and/or partial bars to any recovery by the Plaintiff herein.

53.    To the extent any claims against the Defendant may exist, said claims are barred from being litigated in a court of law by virtue of an Arbitration Agreement entered into between Resident and Defendant.  This Answer is filed in accordance with the Arkansas Rules of Civil Procedure and in no way should be construed to evidence a waiver by Defendant to invoke the litigation process or that, in fact, Defendant has invoked the litigation process.

54.    Defendant affirmatively asserts that Plaintiff's claims are barred, in whole or in part, because any damages allegedly suffered were not proximately caused by Defendant's conduct.

55.    Defendant denies that it was negligent in any respect.

56.    Defendant affirmatively asserts that the claims against it fail to state a cause of action upon which relief can be granted and should be dismissed as a matter of law.

57.    Defendant affirmatively asserts that Plaintiff's claim for liability based upon any violation of the Arkansas Deceptive Trade Practices Act should be dismissed for failure to state a

cause of action pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure pursuant to Arkansas Code Annotated § 4-88-101 and as Plaintiff has suffered no actual damages and lacks standing to pursue such claims.

58.     Defendant affirmatively asserts that Plaintiff's claim for liability based upon any violation of the Arkansas Deceptive Trade Practices Act should be dismissed for failure to state a cause of action pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure pursuant to Arkansas Code Annotated § 4-88-101 and as Plaintiff failed to plead any factual assertion by Defendant upon which a reasonable person could rely.

59.     Defendant affirmatively asserts that Plaintiff's claims for liability based upon any violation of the Arkansas Deceptive Trade Practices Act should be dismissed for failure to state a cause of action pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure pursuant to Arkansas Code Annotated § 4-88-101 and as Plaintiff failed to plead facts sufficient to show actually reliance on any representations or conduct by Defendant.

60.     Defendant denies that their conduct was grossly negligent, willful, wanton, reckless, malicious, intentional, or conducted with conscious indifference to the rights of Mr. Bearden

61.     Defendant affirmatively pleads that Plaintiff's Complaint fails to state facts sufficient to justify an award of punitive damages.

62.     Defendant affirmatively pleads that Plaintiff's claim for punitive damages cannot be sustained because an award of punitive damages under Arkansas law by a jury does not provide constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages award.

9

63.     Defendant affirmatively pleads that Plaintiff's claim for punitive damages against Defendant is barred, in whole or in part, because an award of punitive damages under Arkansas law would violate the Defendant's due process rights and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution.

64.     Defendant affirmatively pleads that Plaintiff's claim for punitive damages cannot be sustained because Arkansas law regarding the standards for determining liability for and the amount of punitive damages fail to give the Defendant prior notice of the conduct for which punitive damages may be imposed, and the severity of the penalty that may be imposed, and are void for vagueness in violation of these Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution.

65.     Defendant affirmatively asserts that Plaintiff's claims for punitive damages against Defendant cannot be sustained, because an award of punitive damages under Arkansas law, subject to no predetermined limit, such as a maximum multiple of compensatory damages, or a maximum amount on the amount of punitive damages that may be imposed, would violate these Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution.

66.     Defendant affirmatively pleads that Plaintiff's claims for punitive damages cannot be sustained, because an award of punitive damages under Arkansas law which allows Plaintiff to prejudicially emphasize the corporate status of Defendant violates such Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the

United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution, and would be improper under the common law and public policy of Arkansas.

67.    Defendant affirmatively asserts that Plaintiff's claim for punitive damages against cannot be sustained because any award of punitive damages made under a process which fails to bifurcate the issue of punitive damages from the remaining issues would violate the Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution, and would be improper under the common law and public policy of Arkansas.

68.    Defendant affirmatively asserts that Plaintiff's claim for punitive damages cannot be sustained because an award of punitive damages under Arkansas law by a jury that (1) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages award, (2) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award for punitive damages, in whole or in part on the basis of invidiously discriminatory characteristics, including without limitation the residence, wealth and corporate status of Defendant, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, (5) is not properly instructed regarding Plaintiff's burden of proof with respect to each and every element of a claim for punitive damages, and (6) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards.  This would violate Defendant's due process and equal protection rights

11

guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article 2, §§ 2, 3 and 8 of the Arkansas Constitution, and would be improper under the common law and public policy of Arkansas.

69.     Plaintiff's claim for punitive damages against Defendant cannot be sustained, because an award of punitive damages in this case, combined with any prior, contemporaneous, or subsequent judgments against Defendant for punitive damages, would constitute impermissible multiple punishments in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Article II, §§ 2, 3 and 8 of the Arkansas Constitution.

70.     Defendant affirmatively asserts the right to plead further, including reservation of all affirmative defenses allowed under Arkansas law which are required to be pled in the initial pleading and all third party claims which may be appropriate.

WHEREFORE, Defendant prays that Plaintiff's Complaint be dismissed, for its costs herein expended, and for all other proper relief to which it may be entitled.

Respectfully submitted,

HARDIN, JESSON & TERRY, PLC
Attorneys at Law
1401 W. Capitol Ave., Suite 190
Little Rock, Arkansas 72201
(501) 850-0015

By: _____
Kirkman T. Dougherty (Arkansas Bar No. 91133)
Jeffrey W. Hatfield (Arkansas Bar No. 96235)
Kynda Almefty (Arkansas Bar No. 2004197)

12

## CERTIFICATE OF SERVICE

I, Kynda Almefty, one of the attorneys for the Defendant herein, do hereby certify that a true and correct copy of the above and foregoing pleading has been served upon the Plaintiff by depositing a copy of the same in the United States Postal Mail Service, postage prepaid, addressed to:

Mr. Bobby Martin
Morgan & Morgan LLC
One Commerce Square, Suite 200
Memphis, TN 38103

on this 10th day of September, 2013.

Kynda Almefty